UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

* * *

| | |
|---|---|
| BANK OF NEW YORK MELLON,<br><br>Plaintiff(s),<br><br>v.<br><br>SOUTHERN HIGHLANDS COMMUNITY ASSOCIATION, et al.,<br><br>Defendant(s). | Case No. 2:16-CV-1177 JCM (VCF)<br><br>ORDER |

Presently before the court is defendant Southern Highlands Community Association's (the "HOA") motion for summary judgment. (ECF No. 73). Plaintiff Bank of New York Mellon ("BNYM") filed a response. (ECF No. 79).

Also before the court is BNYM's motion for summary judgment. (ECF No. 74). The HOA (ECF No. 78) and SFR Investments Pool 1, LLC ("SFR") (ECF No. 81) responded, to which BNYM replied (ECF Nos. 82, 85).

Also before the court is defendant SFR's motion for summary judgment. (ECF No. 75). BNYM responded (ECF No. 80), to which SFR replied (ECF No. 84).

**I.     Facts**

This case involves a dispute over real property located at 11545 Cantina Terlano Place, Las Vegas, Nevada 89141 (the "property"). On August 11, 2005, Salma Khan obtained a loan in the amount of $838,150.00 to purchase the property, which was secured by a deed of trust recorded on October 10, 2005. (ECF No. 1).

The deed of trust was assigned to BNYM via an assignment of deed of trust recorded on December 23, 2009. (ECF No. 1).

On January 27, 2011, defendant Alessi & Koenig, LLC ("A&K"), acting on behalf of the HOA, recorded a notice of delinquent assessment lien, stating an amount due of $895.02. (ECF No. 1).

On April 12, 2011, Khan recorded a loan modification agreement increasing the principal balance under the loan to $1,000,706.62. (ECF No. 1).

On April 20, 2011, A&K recorded a notice of default and election to sell to satisfy the delinquent assessment lien, stating an amount due of $2,161.47. (ECF No. 1). On September 8, 2011, A&K recorded a notice of trustee's sale, stating an amount due of $3,709.87. (ECF No. 1). On July 11, 2012, SFR purchased the property at the foreclosure sale for $9,200.00. (ECF No. 1). A trustee's deed upon sale in favor of SFR was recorded on July 24, 2012. (ECF No. 1).

On May 25, 2016, BNYM filed the underlying complaint. (ECF No. 1). On October 12, 2016, BNYM filed an amended complaint, alleging seven causes of action: (1) quiet title/declaratory judgment against all defendants; (2) breach of NRS 116.1113 against A&K and the HOA; (3) wrongful foreclosure against A&K and the HOA; (4) injunctive relief against SFR; (5) deceptive trade practices against A&K and the HOA; (6) judicial foreclosure against Khan; and (7) alternative claim for breach of contract against Khan. (ECF No. 12).[1]

On October 24, 2016, SFR filed an answer and counterclaim against BNYM for quiet title/declaratory relief and injunctive relief. (ECF No. 19).

On July 3, 2017, the court dismissed claims (2) through (5) of BNYM's amended complaint (ECF No. 12), as well as claim (2) of SFR's counterclaim (ECF No. 19). (ECF No. 72). The court also denied SFR's motion for partial summary judgment (ECF No. 51) pursuant to Article III's prohibition against advisory opinions. *Id.*

In the instant motions, the HOA, BNYM, and SFR each move the court to grant summary judgment in its favor as to the last remaining cause of action alleged in BNYM's amended complaint: quiet title/declaratory relief. The court will address each parties' motions as it sees fit.

. . .

---

[1] BNYM voluntarily dismissed Khan. (*See* ECF No. 48).

James C. Mahan
U.S. District Judge

## II. Legal Standard

The Federal Rules of Civil Procedure allow summary judgment when the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that "there is no genuine dispute as to any material fact and the movant is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(a). A principal purpose of summary judgment is "to isolate and dispose of factually unsupported claims." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–24 (1986).

For purposes of summary judgment, disputed factual issues should be construed in favor of the non-moving party. *Lujan v. Nat'l Wildlife Fed.*, 497 U.S. 871, 888 (1990). However, to be entitled to a denial of summary judgment, the nonmoving party must "set forth specific facts showing that there is a genuine issue for trial." *Id.*

In determining summary judgment, a court applies a burden-shifting analysis. The moving party must first satisfy its initial burden. "When the party moving for summary judgment would bear the burden of proof at trial, it must come forward with evidence which would entitle it to a directed verdict if the evidence went uncontroverted at trial. In such a case, the moving party has the initial burden of establishing the absence of a genuine issue of fact on each issue material to its case." *C.A.R. Transp. Brokerage Co. v. Darden Rests., Inc.*, 213 F.3d 474, 480 (9th Cir. 2000) (citations omitted).

By contrast, when the nonmoving party bears the burden of proving the claim or defense, the moving party can meet its burden in two ways: (1) by presenting evidence to negate an essential element of the non-moving party's case; or (2) by demonstrating that the nonmoving party failed to make a showing sufficient to establish an element essential to that party's case on which that party will bear the burden of proof at trial. *See Celotex Corp.*, 477 U.S. at 323–24. If the moving party fails to meet its initial burden, summary judgment must be denied and the court need not consider the nonmoving party's evidence. *See Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 159–60 (1970).

If the moving party satisfies its initial burden, the burden then shifts to the opposing party to establish that a genuine issue of material fact exists. *See Matsushita Elec. Indus. Co. v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986). To establish the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." *T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n*, 809 F.2d 626, 631 (9th Cir. 1987).

In other words, the nonmoving party cannot avoid summary judgment by relying solely on conclusory allegations that are unsupported by factual data. *See Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Instead, the opposition must go beyond the assertions and allegations of the pleadings and set forth specific facts by producing competent evidence that shows a genuine issue for trial. *See Celotex*, 477 U.S. at 324.

At summary judgment, a court's function is not to weigh the evidence and determine the truth, but to determine whether there is a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249 (1986). The evidence of the nonmovant is "to be believed, and all justifiable inferences are to be drawn in his favor." *Id.* at 255. But if the evidence of the nonmoving party is merely colorable or is not significantly probative, summary judgment may be granted. *See id.* at 249–50.

### III. Discussion

In the HOA and SFR's motions, they contend that summary judgment in their favor is proper because, *inter alia*, the foreclosure sale extinguished BNYM's deed of trust pursuant to NRS 116.3116 and *SFR Investments*. (ECF Nos. 73, 75). The HOA and SFR further contend that the foreclosure sale should not be set aside because the price paid at the foreclosure sale was commercially reasonable, the HOA complied with all notice requirements under NRS 116, BNYM has not shown fraud, unfairness, or oppression as outlined in *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*"), and because BNYM failed to tender the super-priority portion of the lien. (ECF Nos. 73, 75). The court agrees.

Under Nevada law, "[a]n action may be brought by any person against another who claims an estate or interest in real property, adverse to the person bringing the action for the purpose of determining such adverse claim." Nev. Rev. Stat. § 40.010. "A plea to quiet title does not require

any particular elements, but each party must plead and prove his or her own claim to the property in question and a plaintiff's right to relief therefore depends on superiority of title." *Chapman v. Deutsche Bank Nat'l Trust Co.*, 302 P.3d 1103, 1106 (Nev. 2013) (internal quotation marks and citations omitted). Therefore, for plaintiff to succeed on its quiet title action, it needs to show that its claim to the property is superior to all others. *See also Breliant v. Preferred Equities Corp.*, 918 P.2d 314, 318 (Nev. 1996) ("In a quiet title action, the burden of proof rests with the plaintiff to prove good title in himself.").

Section 116.3116(1) of the NRS gives an HOA a lien on its homeowners' residences for unpaid assessments and fines. Nev. Rev. Stat. § 116.3116(1). Moreover, NRS 116.3116(2) gives priority to that HOA lien over all other liens and encumbrances with limited exceptions—such as "[a] first security interest on the unit recorded before the date on which the assessment sought to be enforced became delinquent." Nev. Rev. Stat. § 116.3116(2)(b).

The statute then carves out a partial exception to subparagraph (2)(b)'s exception for first security interests. *See* Nev. Rev. Stat. § 116.3116(2). In *SFR Investments Pool 1 v. U.S. Bank*, the Nevada Supreme Court provided the following explanation:

> As to first deeds of trust, NRS 116.3116(2) thus splits an HOA lien into two pieces, a superpriority piece and a subpriority piece. The superpriority piece, consisting of the last nine months of unpaid HOA dues and maintenance and nuisance-abatement charges, is "prior to" a first deed of trust. The subpriority piece, consisting of all other HOA fees or assessments, is subordinate to a first deed of trust.

334 P.3d 408, 411 (Nev. 2014) ("*SFR Investments*").

Chapter 116 of the Nevada Revised Statutes permits an HOA to enforce its superpriority lien by nonjudicial foreclosure sale. *Id.* at 415. Thus, "NRS 116.3116(2) provides an HOA a true superpriority lien, proper foreclosure of which will extinguish a first deed of trust." *Id.* at 419; *see also* Nev. Rev. Stat. § 116.31162(1) (providing that "the association may foreclose its lien by sale" upon compliance with the statutory notice and timing rules).

Subsection (1) of NRS 116.31166 provides that the recitals in a deed made pursuant to NRS 116.31164 of the following are conclusive proof of the matters recited:

> (a) Default, the mailing of the notice of delinquent assessment, and the recording of the notice of default and election to sell;
> (b) The elapsing of the 90 days; and
> (c) The giving of notice of sale[.]

Nev. Rev. Stat. § 116.31166(1)(a)–(c).[2] "The 'conclusive' recitals concern default, notice, and publication of the [notice of sale], all statutory prerequisites to a valid HOA lien foreclosure sale as stated in NRS 116.31162 through NRS 116.31164, the sections that immediately precede and give context to NRS 116.31166." *Shadow Wood Homeowners Assoc. v. N.Y. Cmty. Bancorp., Inc.*, 366 P.3d 1105 (Nev. 2016) ("*Shadow Wood*").

Based on *Shadow Wood*, the recitals therein are conclusive evidence that the foreclosure lien statutes were complied with—*i.e.*, that the foreclosure sale was proper. *See id.*; *see also Nationstar Mortg., LLC v. SFR Investments Pool 1, LLC*, No. 70653, 2017 WL 1423938, at *2 (Nev. App. Apr. 17, 2017) ("And because the recitals were conclusive evidence, the district court did not err in finding that no genuine issues of material fact remained regarding whether the foreclosure sale was proper and granting summary judgment in favor of SFR."). Therefore, pursuant to *SFR Investments*, NRS 116.3116, and the recorded trustee's deed upon sale in favor of SFR, the foreclosure sale was proper and extinguished the first deed of trust.

Notwithstanding, the court retains the equitable authority to consider quiet title actions when a HOA's foreclosure deed contains statutorily conclusive recitals. *See Shadow Wood Homeowners Assoc.*, 366 P.3d at 1112 ("When sitting in equity . . . courts must consider the entirety of the circumstances that bear upon the equities. This includes considering the status and actions of all parties involved, including whether an innocent party may be harmed by granting the desired relief."). Accordingly, to withstand summary judgment in the HOA and SFR's favor, BNYM must raise colorable equitable challenges to the foreclosure sale or set forth evidence demonstrating fraud, unfairness, or oppression.

---

[2] The statute further provides as follows:

> 2. Such a deed containing those recitals is conclusive against the unit's former owner, his or her heirs and assigns, and all other persons. The receipt for the purchase money contained in such a deed is sufficient to discharge the purchaser from obligation to see to the proper application of the purchase money.
>
> 3. The sale of a unit pursuant to NRS 116.31162, 116.31163 and 116.31164 vests in the purchaser the title of the unit's owner without equity or right of redemption.

Nev. Rev. Stat. § 116.31166(2)–(3).

In its motion for summary judgment, BNYM sets forth the following relevant arguments: (1) the foreclosure sale is invalid because NRS Chapter 116 is facially unconstitutional pursuant to *Bourne Valley Court Trust v. Wells Fargo Bank, N.A.*, 832 F.3d 1154 (9th Cir. 2016), *cert. denied*, No. 16-1208, 2017 WL 1300223 (U.S. June 26, 2017) ("*Bourne Valley*"); (2) its predecessor-in-interest offered to pay the superpriority portion of the lien, which adequately preserved the first deed of trust; (3) the foreclosure sale was commercially unreasonable; (4) SFR is not a bona fide purchaser; and (5) *SFR Investments* should not be applied retroactively. (ECF No. 74). The court will address each in turn.

While the court will analyze BNYM's equitable challenges regarding its quiet title, the court notes that the failure to utilize legal remedies makes granting equitable remedies unlikely. *See Las Vegas Valley Water Dist. v. Curtis Park Manor Water Users Ass'n*, 646 P.2d 549, 551 (Nev. 1982) (declining to allow equitable relief because an adequate remedy existed at law). Simply ignoring legal remedies does not open the door to equitable relief.

**A. Unconstitutionality of NRS 116**

BNYM contends that *Bourne Valley* renders any factual issues concerning actual notice as irrelevant. (ECF No. 74). BNYM thus maintains that it need only "show that the foreclosure and extinguishment of BNYM's rights occurred pursuant to NRS 116." *Id.*

BNYM has failed to show that *Bourne Valley* is applicable to its case. Despite BNYM's erroneous interpretation to the contrary, *Bourne Valley* did not hold that the entire foreclosure statute was facially unconstitutional. At issue in *Bourne Valley* was the constitutionality of the "opt-in" provision of NRS Chapter 116, not the statute in its entirety. Specifically, the Ninth Circuit held that NRS 116.3116's "opt-in" notice scheme, which required a HOA to alert a mortgage lender that it intended to foreclose only if the lender had affirmatively requested notice, facially violated mortgage lenders' constitutional due process rights. *Bourne Valley*, 832 F.3d at 1157–58. As identified in *Bourne Valley*, NRS 116.31163(2)'s "opt-in" provision unconstitutionally shifted the notice burden to holders of the property interest at risk—not NRS Chapter 116 in general. *See id.* at 1158.

James C. Mahan
U.S. District Judge

Further, the holding in *Bourne Valley* provides little support for BNYM as BNYM's contentions are not predicated on an unconstitutional shift of the notice burden, which required it to "opt in" to receive notice. BNYM does not argue that it/its predecessor-in-interest lacked notice, actual or otherwise, of the event that affected the deed of trust (*i.e.*, the foreclosure sale). Rather, BNYM merely complains about the content of the recorded notices. (*See, e.g.*, ECF No. 74 at 9 ("none of the recorded notices identified the superpriority amount and when [BNYM's] predecessor asked for the information, the HOA/[A&K] refused to provide it.")).

Further, BNYM confuses constitutionally mandated notice with the notices required to conduct a valid foreclosure sale. Due process does not require actual notice. *Jones v. Flowers*, 547 U.S. 220, 226 (2006). Rather, it requires notice "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Bank & Trust Co.*, 339 U.S. 306, 314 (1950); *see also Bourne Valley*, 832 F.3d at 1158. Accordingly, BNYM's summary judgment motion as to quiet title and declaratory relief will be denied.

"A first deed of trust holder only has a constitutional grievance if he in fact did not receive reasonable notice of the sale at which his property rights was extinguished." *Wells Fargo Bank, N.A. v. Sky Vista Homeowners Ass'n*, No. 315CV00390RCJVPC, 2017 WL 1364583, at *4 (D. Nev. Apr. 13, 2017). To state a procedural due process claim, a claimant must allege "(1) a deprivation of a constitutionally protected liberty or property interest, and (2) a denial of adequate procedural protections." *Brewster v. Bd. of Educ. of Lynwood Unified Sch. Dist.*, 149 F.3d 971, 982 (9th Cir. 1998). BNYM has failed on both prongs.

Here, BNYM has failed to show that it did not receive proper notice. BNYM's predecessor in interest, BANA, received a notice of default and election to sell, as well as a notice of sale from the HOA. Therefore, BNYM's due process argument fails as a matter of law. *See, e.g.*, *Spears v. Spears*, 596 P.2d 210, 212 (Nev. 1979) ("The rule is well established that one who is not prejudiced by the operation of a statute cannot question its validity.").

Accordingly, BNYM's challenge based on due process and *Bourne Valley* fails as a matter of law, and BNYM's motion for summary judgment will be denied as it relates to these grounds.

### B. Rejected Tender Offer

BNYM argues that its predecessor-in-interest preserved the deed of trust by offering, in letter form, to tender the superpriority amount prior to the foreclosure sale. (ECF No. 74, Ex. 9). In particular, BNYM asserts that because the HOA/A&K obstructed BNYM's attempt to satisfy the superpriority portion of the lien by refusing to provide information by which the superpriority portion of the lien could be calculated, the offer "constituted a valid tender preserving the deed of trust." (ECF No. 74 at 12). The court disagrees.

Under NRS 116.31166(1), the holder of a first deed of trust may pay off the superpriority portion of an HOA lien to prevent the foreclosure sale from extinguishing that security interest. *See* Nev. Rev. Stat. § 116.31166(1); *see also SFR Investments*, 334 P.3d at 414 ("But as a junior lienholder, U.S. Bank could have paid off the SHHOA lien to avert loss of its security . . . ."); *see also, e.g.*, *7912 Limbwood Ct. Trust v. Wells Fargo Bank, N.A., et al.*, 979 F. Supp. 2d 1142, 1149 (D. Nev. 2013) ("If junior lienholders want to avoid this result, they readily can preserve their security interests by buying out the senior lienholder's interest." (citing *Carillo v. Valley Bank of Nev.*, 734 P.2d 724, 725 (Nev. 1987); *Keever v. Nicholas Beers Co.*, 611 P.2d 1079, 1083 (Nev. 1980))).

BNYM has not shown that it/its predecessor-in-interest tendered the superpriority amount prior to the foreclosure sale so as to preserve the first deed of trust. BNYM does not dispute that it/its predecessor-in-interest failed to pay the amount due prior to the foreclosure sale. Rather, BNYM argues that the offer to pay discharged BNYM's tender obligation. (ECF No. 74).

Tender is proper when the tenderer is "at all times ready, willing, and able to pay" the amounts owed, even if that amount is improperly rejected. *Ebert v. W. States Refining Co.*, 337 P.2d 1075, 1077 (Nev. 1959). BNYM/its predecessor-in-interest never tendered any amount to the HOA/A&K. Rather, BNYM/its counsel merely presumed, without adequate support, that offering to tender its own computation of the amount for the nine-months' common assessments predating the notice of default was sufficient tender. (ECF No. 38-6); *see generally, e.g.*, Nev. Rev. Stat. § 107.080 (allowing trustee's sale under a deed of trust only when a subordinate interest has failed to make good the deficiency in performance or payment for 35 days); Nev. Rev. Stat. §

40.430 (barring judicially ordered foreclosure sale if the deficiency is made good at least 5 days prior to sale).

The notice of default recorded April 20, 2011, set forth an amount due of $2,161.47. (ECF No. 1). Rather than tendering the $2,161.47 due so as to preserve its interest in the property and then later seeking a refund of any difference, BNYM/its predecessor-in-interest elected to send a letter requesting the amount for the nine-months' worth of assessments owed. *See SFR Investments*, 334 P.3d at 418 (noting that the deed of trust holder can pay the entire lien amount and then sue for a refund). Had BNYM/its predecessor-in-interest paid the amount set forth in the notice of default ($2,161.47), the HOA's/SFR's interest would have been subordinate to the first deed of trust. *See* Nev. Rev. Stat. § 116.31166(1). While BNYM asserts that the HOA not providing this information was wrongful, BNYM offers nothing in support of such assertion. (ECF No. 74).

Now, after failing to use the legal remedies available to it to prevent the property from being sold to a third party—for example, seeking a temporary restraining order, a preliminary injunction, and filing a *lis pendens* on the property (*see* Nev. Rev. Stat. §§ 14.010, 40.060)—BNYM seeks to profit from its own failure to follow the rules set forth in the statutes by invoking equitable relief. *See generally, e.g.*, *Barkley's Appeal. Bentley's Estate*, 2 Monag. 274, 277 (Pa. 1888) ("In the case before us, we can see no way of giving the petitioner the equitable relief she asks without doing great injustice to other innocent parties who would not have been in a position to be injured by such a decree as she asks if she had applied for relief at an earlier day."); *Nussbaumer v. Superior Court in & for Yuma Cty.*, 489 P.2d 843, 846 (Ariz. 1971) ("Where the complaining party has access to all the facts surrounding the questioned transaction and merely makes a mistake as to the legal consequences of his act, equity should normally not interfere, especially where the rights of third parties might be prejudiced thereby.").

Based on the foregoing, BNYM has not set forth any evidence as to a tender in a sufficient amount prior to the foreclosure sale, nor has it shown that the HOA's alleged rejection was wrongful. Accordingly, BNYM's motion for summary judgment will be denied as it relates to this argument.

### C. Commercial Reasonability

The HOA and SFR argue that the foreclosure sale was commercially reasonable because the sale price ($9,200.00) was not grossly inadequate given the conditions under which the property was sold and because BNYM has not presented any evidence of fraud, unfairness, or oppression. (ECF Nos. 73, 75).

BNYM argues that the court should grant its motion because the foreclosure sale for approximately 2.2% of the property's fair market value is grossly inadequate and because BNYM can establish evidence of fraud, unfairness, or oppression. (ECF No. 74). However, BNYM overlooks the reality of the foreclosure process. The amount of the lien—not the fair market value of the property—is what typically sets the sales price.

BNYM further argues that the *Shadow Wood* court adopted the restatement approach, quoting the opinion as holding that "[w]hile gross inadequacy cannot be precisely defined in terms of a specific percentage of fair market value, generally a court is warranted in invalidating a sale where the price is less than 20 percent of fair market value." (ECF No. 74) (emphasis omitted).

NRS 116.3116 codifies the Uniform Common Interest Ownership Act ("UCIOA") in Nevada. *See* Nev. Rev. Stat. § 116.001 ("This chapter may be cited as the Uniform Common-Interest Ownership Act"); *see also SFR Investments*, 334 P.3d at 410. Numerous courts have interpreted the UCIOA and NRS 116.3116 as imposing a commercial reasonableness standard on foreclosure of association liens.[3]

In *Shadow Wood*, the Nevada Supreme Court held that an HOA's foreclosure sale may be set aside under a court's equitable powers notwithstanding any recitals on the foreclosure deed

---

[3] *See, e.g.*, *Bayview Loan Servicing, LLC v. Alessi & Koenig, LLC*, 962 F. Supp. 2d 1222, 1229 (D. Nev. 2013) ("[T]he sale for $10,000 of a Property that was worth $176,000 in 2004, and which was probably worth somewhat more than half as much when sold at the foreclosure sale, raises serious doubts as to commercial reasonableness."); *SFR Investments*, 334 P.3d at 418 n.6 (noting bank's argument that purchase at association foreclosure sale was not commercially reasonable); *Thunder Props., Inc. v. Wood*, No. 3:14-cv-00068-RCJ-WGC, 2014 WL 6608836, at *2 (D. Nev. Nov. 19, 2014) (concluding that purchase price of "less than 2% of the amounts of the deed of trust" established commercial unreasonableness "almost conclusively"); *Rainbow Bend Homeowners Ass'n v. Wilder*, No. 3:13-cv-00007-RCJ-VPC, 2014 WL 132439, at *2 (D. Nev. Jan. 10, 2014) (deciding case on other grounds but noting that "the purchase of a residential property free and clear of all encumbrances for the price of delinquent HOA dues would raise grave doubts as to the commercial reasonableness of the sale under Nevada law"); *Will v. Mill Condo. Owners' Ass'n*, 848 A.2d 336, 340 (Vt. 2004) (discussing commercial reasonableness standard and concluding that "the UCIOA does provide for this additional layer of protection").

where there is a "grossly inadequate" sales price and "fraud, unfairness, or oppression." 366 P.3d at 1110; *see also Nationstar Mortg., LLC v. SFR Invs. Pool 1, LLC*, 184 F. Supp. 3d 853, 857–58 (D. Nev. 2016). In other words, "demonstrating that an association sold a property at its foreclosure sale for an inadequate price is not enough to set aside that sale; there must also be a showing of fraud, unfairness, or oppression." *Id.* at 1112; *see also Long v. Towne*, 639 P.2d 528, 530 (Nev. 1982) ("Mere inadequacy of price is not sufficient to justify setting aside a foreclosure sale, absent a showing of fraud, unfairness or oppression." (citing *Golden v. Tomiyasu*, 387 P.2d 989, 995 (Nev. 1963) (stating that, while a power-of-sale foreclosure may not be set aside for mere inadequacy of price, it may be if the price is grossly inadequate and there is "in addition proof of some element of fraud, unfairness, or oppression as accounts for and brings about the inadequacy of price" (internal quotation omitted)))).

Despite BNYM's assertion to the contrary, the *Shadow Wood* court did not adopt the restatement. In fact, nothing in *Shadow Wood* suggests that the Nevada Supreme Court's adopted, or had the intention to adopt, the restatement. *Compare Shadow Wood*, 366 P.3d at 1112–13 (citing the restatement as secondary authority to warrant use of the 20% threshold test for grossly inadequate sales price), *with St. James Village, Inc. v. Cunningham*, 210 P.3d 190, 213 (Nev. 2009) (explicitly adopting § 4.8 of the Restatement in specific circumstances); *Foster v. Costco Wholesale Corp.*, 291 P.3d 150, 153 (Nev. 2012) ("[W]e adopt the rule set forth in the Restatement (Third) of Torts: Physical and Emotional Harm section 51."); *Cucinotta v. Deloitte & Touche, LLP*, 302 P.3d 1099, 1102 (Nev. 2013) (affirmatively adopting the Restatement (Second) of Torts section 592A). Because Nevada courts have not adopted the relevant section(s) of the restatement at issue here, the *Long* test, which requires a showing of fraud, unfairness, or oppression in addition to a grossly inadequate sale price to set aside a foreclosure sale, controls. *See* 639 P.2d at 530.

Nevada has not clearly defined what constitutes "unfairness" in determining commercial reasonableness. The few Nevada cases that have discussed commercial reasonableness state, "every aspect of the disposition, including the method, manner, time, place, and terms, must be commercially reasonable." *Levers v. Rio King Land & Inv. Co.*, 560 P.2d 917, 920 (Nev. 1977). This includes "quality of the publicity, the price obtained at the auction, [and] the number of

bidders in attendance." *Dennison v. Allen Grp. Leasing Corp.*, 871 P.2d 288, 291 (Nev. 1994) (citing *Savage Constr. v. Challenge–Cook*, 714 P.2d 573, 574 (Nev. 1986)).

Nevertheless, BNYM fails to set forth sufficient evidence to show fraud, unfairness, or oppression so as to justify the setting aside of the foreclosure sale. BNYM relies on its repeated assertion that merely offering to tender the superpriority amount is sufficient to show fraud, unfairness, or oppression. However, as the discussed in the previous section, the amount due on the date of BNYM's tender was set forth in the notice of default. Rather than tendering the noticed amount under protest so as to preserve its interest and then later seeking a refund of the difference in dispute, BNYM chose to merely offer to tender the superiority amount.

BNYM also claims that the CC&Rs represented to the public that BNYM's lien would not be extinguished by an HOA foreclosure sale. (ECF No. 74).

NRS 116.1104 provides that "[e]xcept as expressly provided in this chapter, its provisions may not be varied by agreement, and rights conferred by it may not be waived." Nev. Rev. Stat. § 116.1104; *see also Bayview Loan Servicing, LLC v. SFR Investments Pool 1, LLC*, No. 2:14-CV-1875-JCM-GWF, 2017 WL 1100955, at *9 (D. Nev. Mar. 22, 2017) (discussing the reasoning in *ZYZZX2*); *JPMorgan Chase Bank, N.A. v. SFR Investments Pool 1, LLC*, 200 F. Supp. 3d 1141, 1168 (D. Nev. 2016) (holding that an HOA's failure to comply with its CC&Rs does not set aside a foreclosure sale, due to NRS 116.1104). Accordingly, language in the CC&Rs has no impact on the superprioriety lien rights granted by NRS 116.

In addition, this exact argument was addressed and rejected by the court in *SFR Investments Pool 1, LLC v. U.S. Bank N.A.*, 130 Nev. Adv. Op. 75, 334 P.3d 408, 418-18 (2014).

Accordingly, BNYM's commercial reasonability argument fails as a matter of law as it failed to set forth evidence of fraud, unfairness, or oppression. *See, e.g.*, *Nationstar Mortg., LLC*, No. 70653, 2017 WL 1423938, at *3 n.2 ("Sale price alone, however, is never enough to demonstrate that the sale was commercially unreasonable; rather, the party challenging the sale must also make a showing of fraud, unfairness, or oppression that brought about the low sale price.").

### D. Bona Fide Purchaser Status

Because the court has concluded that BNYM failed to properly raise any equitable challenges to the foreclosure sale, the court need not address SFR's purported status as a bona fide purchaser for value. *See, e.g.*, *Nationstar Mortg., LLC v. SFR Investments Pool 1, LLC*, No. 70653, 2017 WL 1423938, at *3 n.3 (Nev. App. Apr. 17, 2017) (citing *Shadow Wood,* 366 P.3d at 1114).

### E. Retroactivity

BNYM contends that *SFR Investments* should not be applied retroactively. (ECF No. 74).

This court has consistently held that *SFR Investments* applies retroactively, and the Nevada Supreme Court has recently confirmed this court's position. *K&P Homes v. Christiana Trust*, 133 Nev. Adv. Op. 51 (Nev. July 27, 2017). Accordingly, BNYM's contention fails.

## IV. Conclusion

In light of the foregoing, the court will grant SFR's motion for summary judgment on its claims for quiet title/declaratory relief and permanent injunction. (ECF No. 75). The court will also grant the HOA's summary judgment motion as to BNYM's quiet title/declaratory relief claim. (ECF No. 73).

Accordingly,

IT IS HEREBY ORDERED, ADJUDGED, and DECREED that SFR's motion for summary judgment (ECF No. 75) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that the HOA's motion for summary judgment (ECF No. 73) be, and the same hereby is, GRANTED.

IT IS FURTHER ORDERED that BNYM's motion for summary judgment (ECF No. 74) be, and the same hereby is, DENIED.

The clerk is instructed to enter judgment accordingly and close the case.

DATED February 22, 2018.

_____
UNITED STATES DISTRICT JUDGE